**FILED**

FEB 07 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___ ULC ___ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALDO BURROLA, individually and on behalf of other members of the general public similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>U.S. SECURITY ASSOCIATES, INC. and DOES 1 TO 100, inclusive,<br><br>        Defendants. | Case No.: 3:18-cv-00594-BEN-JLB<br><br>**ORDER:**<br>**(1) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT; and**<br><br>**(2) GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION, BIFURCATION OF PAGA REPRESENTATIVE CLAIM, DISMISSAL OF CLASS ALLEGATIONS, AND STAY OF ALL PROCEEDINGS.**<br><br>**[Doc. Nos. 3, 5]** |

Pending before the Court is Defendant U.S. Security Associates, Inc.'s ("U.S. Security" or "Defendant") Motion to Compel Arbitration, Bifurcation of PAGA Representative Claim, Dismissal of Class Allegations, and Stay of All Proceedings. Also before the Court is Plaintiff Waldo Burrola's ("Burrola" or "Plaintiff") Motion for Leave

1

to File a First Amended Complaint ("FAC"). The Court decides these matters on the papers and without oral argument. *See* Civ. L. R. 7.1(d.1). For the reasons stated below, the Court **GRANTS** Burrola's Motion for Leave to File a First Amended Complaint and **GRANTS** U.S. Security's Motion to Compel Arbitration.

## I. BACKGROUND

As the parties are familiar with the facts and procedural history of the case, the Court addresses each with brevity. U.S. Security is in the business of providing security guards and officer solutions to its business-clients, including those business-clients who operate and do business across state lines. Burrola was a security guard for U.S. Security in California, beginning November 28, 2016. As a condition of employment, Burrola signed a "Dispute Resolution Agreement" requiring arbitration of any claims between Burrola and U.S. Security. ("Agreement" [Doc. No. 3-2 Ex. A].) This action involves U.S. Securities alleged systematic failure to provide restroom facilities and retaliatory action which was applied to all current and former non-exempt employees of U.S. Security in violation of the Labor Code, California Code, and U.S. Dept. of Labor Code. (Doc. No. 1-2 at 5.) Burrola claims he suffered from a loss of salary and benefits, emotional distress, mental anguish, humiliation, as well as detrimental ramifications to his health. (Doc. No. 12 at 1.)

On February 2, 2018, Burrola filed a Class and Representative Action Complaint in the San Diego Superior Court[1], against U.S. Security for damages and restitution, alleging two causes of action stemming from violations of California and federal labor laws[2]. (*See*

---

[1]     On February 2, 2018, Burrola commenced a civil action in the Superior Court of the State of California for the County of San Diego by filing a Class and Representative Action Complaint for Damages and Demand for Jury Trial entitled "Waldo Burrola, an individually, and on behalf of other members of the general public similarly situated, v. U.S. Security Associates, Inc., and Does 1 to 100, inclusive, Case No. 37-2018-00005995-CU-OE-CTL. (*See* Doc. No. 1-2].)

[2]     Burrola alleges two claims for: 1) Failure to Provide Toilet Facilities; 2) Civil Penalties Labor. (*See* Doc. No. 1-2 at 1.)

Doc. No. 1.) During the class period, U.S. Security required that Burrola and Class Members be allowed access to on-site toilet facilities only if they had successfully passed a background check. (Doc. No. 1-2 ¶ 16.) Burrola and Class Members were not given the opportunity to take the background check and thus were not allowed to use the on-site toilet facilities. Id. ¶ 17. Burrola and Class Members were made to procure relief from another employee in order to use off site toilet facilities. *Id.* ¶ 18. Relief was never provided by U.S. Security or an employee of U.S. Security and Burrola and Class Members worked without toilet facilities in violation of California Code of Regulations, Title 8 § 3364(b) and U.S. Dept. of Labor Code, 29 CFR 1910.141. *Id.* ¶ 19. Under both statutes, U.S. Security was required to provide a minimum of one toilet facility for each sex, for every one to fifteen employees. U.S. Security removed the action to this Court on March 21, 2018. *Id.* Burrola now seeks leave to file his FAC. (Doc. No 5.) U.S. Security moves to compel Burrola to submit his claims to arbitration. (*See* Mot. [Doc. No. 3].)

## II. LEGAL STANDARD

### A. Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure governs motions for leave to amend and provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision whether to grant leave to amend under Rule 15(a) is committed to the sound discretion of the trial court. *Waits v. Weller*, 653 F.2d 1288, 1290 (9th Cir. 1981). Leave need not be granted, however, where the amendment would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

///

///

## B.  Federal Arbitration Act

There is no dispute as to the fact that the Federal Arbitration Act ("FAA") governs here.  Under the FAA, a Court need consider only two questions to determine whether to compel arbitration: (1) is there a valid agreement to arbitrate?  And, if so, (2) does the agreement cover the matter in dispute?  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  The Agreement clearly covers the matters in dispute here.  Accordingly, the Court need only consider whether the Agreement is valid.

Section 2 of the Federal Arbitration Act ("FAA") states that:

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  Section 2 codifies "'a national policy favoring arbitration of claims that parties contract to settle in that manner."  *Preston v. Ferrer*, 552 U.S. 346, 352-53 (2008) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)).

Section 3 of the FAA states where an issue involved in a suit or proceeding is referable to arbitration under an agreement in writing, the district court "shall on application of one of the parties' stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ...."  9 U.S.C. § 3.  The language is mandatory, and district courts are required to order arbitration on issues as to which an arbitration agreement has been signed.  *Chiron Corp.* 207 F.3d at 1130.

Under California law, the elements of a valid contract are (1) parties capable of contracting; (2) mutual consent; (3) a lawful object; and (4) consideration.  Cal. Civ. Code § 1550.  However, a court will not enforce an otherwise valid contract if there exists a

4

1  viable defense, such as illegality.[3]  1 Witkin, Summary 10th (2005) Contracts, § 331, p.
2  365.
3  **III. DISCUSSION**
4      A.      **Burrola's Motion for Leave to File a First Amended Complaint**
5          The decision to grant leave to amend the pleadings "is within the sound discretion
6  of the district court."  With this Motion, Burrola seeks to dismiss his federal claim from
7  the second Cause of Action of the operative Complaint.  U.S. Security disputes Burrola's
8  assertion alleging that the Motion attempts to surreptitiously add state law claims under
9  California Labor Code §§ 98.6(a) and 6300, *et seq.* to the second Cause of Action.  (Doc.
10 No. 11 at 1.)
11         In this case, considering that Burrola could have included the state law claims in his
12 original Complaint, the decision to seek dismissal of the federal claim appears to be a
13 tactical decision intended to allow for a jurisdictional challenge at some later point in the
14 proceedings.  Further, because no discovery has been done since the case is still in the early
15 stages, amendment will not result in any prejudice.  Aside from a possible jurisdictional
16 challenge, any evidence of prejudice, undue delay or bad faith is extremely limited.  Thus,
17 dismissing the federal claim and adding the state law claims may be meritorious, and any
18 prejudice to U.S. Security at this point appears to be minimal or non-existent.  Thus, there
19 is insufficient justification to deny leave.
20                      1. **Prejudice to U.S. Security**
21         The Court first considers whether granting Burrola leave to amend would prejudice
22 U.S. Security, as prejudice to the opposing party carries the "greatest weight" in the leave
23 to amend inquiry.  *Eminence Capital,* 316 F.3d at 1052.  Prejudice has been found where
24
25

---

26 [3]    In California, the party seeking to compel arbitration bears the burden of proving
   the existence of a valid arbitration agreement, while a party opposing arbitration bears the
27 burden of proving any fact necessary to its defense.  *Ruiz v. Moss Bros. Auto Group, Inc.,*
28 232 Cal. App. 4th 836, 842 (2014).

5

the "parties have engaged in voluminous and protracted discovery" prior to amendment, or where "[e]xpense, delay, and wear and tear on individuals and companies" is shown. *Kaplan v. Rose,* 49 F.3d 1363, 1370 (9th Cir. 1994); *see also Jackson v. Bank of Haw.,* 902 F.2d 1385, 1387–88 (9th Cir. 1990) (prejudice exists where permitting plaintiff to file an amended complaint will lead to "the nullification of prior discovery," increase 'the burden of necessary future discovery," and the "relitigation of a [previously-decided] suit").

Here, U.S. Security does not argue that granting Burrola leave to amend would prejudice it. *See generally* Opp'n; *see also DCD Programs,* 833 F.2d at 187 ("The party opposing amendment bears the burden of showing prejudice."). U.S. Security also does not argue that permitting amendment would increase the expense of litigation, or cause prejudicial delay.

Nor does the record in this case indicate that permitting amendment would prejudice U.S. Security. As stated *supra,* at the time Burrola filed this Motion, discovery had yet commenced. (Doc. No. 12 at 5 [stating that "Discovery has not yet commenced" and "a trial date has not yet been set."). Therefore, this is not a case where the "parties have engaged in voluminous and protracted discovery" prior to amendment. *Kaplan,* 49 F.3d at 1370.

Finally, U.S. Security does not argue that permitting amendment would delay litigation such that it would suffer prejudice. *See Kaplan,* 49 F.3d at 1370 (prejudice may exist where, *inter alia,* amendment would cause delay). Indeed, in its Opposition, U.S. Security does assert that Burrola "should not be permitted to surreptitiously add additional claims without providing any notice to this Court or Defendants." (Doc. No. 11 at 1.) However, at this early stage of the case, the Court questions whether U.S. Security actually did not have notice considering Burrola's Reply indicates that California Labor Code section 98.6(a) *was* raised in the original Complaint; and moreover, U.S. Security should have anticipated that section 6300, *et seq.* might be sought to be added considering its

6

inclusion in the related suit between Burrola and U.S. Security, also in this district. Accordingly, U.S. Security did or should have anticipated the possibility of addressing this issue at some point, and cannot now claim to face prejudicial delay that the possibility has come to fruition. *Cf. Howard Rice Nemerovski Canady Falk & Rabkin v. Total Tech., Inc.,* No. C 06–0426 CW, 2006 WL 2850047, at *4 (N.D. Cal. Oct. 5, 2006) (court may deny motion to amend on grounds of prejudice where "the party opposing the motion to amend has shown it is surprised by new allegations in the amended pleading that will require more discovery or otherwise delay resolution of the case") (citing *DCD Programs,* 833 F.2d at 186).

For the reasons stated above, the Court finds that granting Burrola leave to amend will not prejudice U.S. Security. Moreover, because U.S. Security makes no showing of prejudice, it must make a "strong showing" of "any of the remaining *Foman* factors" to overcome the "*presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital,* 316 F.3d at 1052 (emphasis in original).

## 2. <u>Undue Delay</u>

U.S. Security does not contend Burrola unduly delayed in seeking to drop his federal claim. This is likely because while Burrola could have brought this claim in his original complaint, a delay of four months while the case is still in its early stages is not undue delay. *B.R. & W.R. v. Beacon Health Options*, No. 16-cv-04576-MEJ, 2017 WL 930796 *2 (N.D. Cal. Mar. 9, 2017) (delay of five months was not undue delay when the action was "still in its incipient stage").

## 3. <u>Bad Faith</u>

In deciding whether to grant a party leave to amend, the district court also considers whether the moving party acted in "bad faith." *Foman,* 371 U.S. at 182. Bad faith exists where, *inter alia,* the proposed amendment "will not save the complaint or the plaintiff merely is seeking to prolong the litigation by adding new but baseless legal theories." *Griggs v. Pace Am. Grp., Inc.,* 170 F.3d 877, 881 (9th Cir. 1999); *DCD Programs,* 833

7

F.2d at 187 (bad faith exists where party sought leave to amend "to destroy diversity and to destroy the jurisdiction of this court") (internal quotation marks omitted). Bad faith may also exist when a party repeatedly represents to the court that the party will not move to amend its complaint, and subsequently moves to amend once "the proverbial writing was on the wall" that the party will suffer an adverse judgment. *Trans Video Elec. Ltd. v. Sony Elec., Inc.*, 278 F.R.D. 505, 510 (N.D. Cal. 2011) (finding bad faith when plaintiff "expressly reaffirmed to this Court on two separate occasions" that it was bringing one claim in patent infringement case, and only moved to amend to add additional claims when briefing on a motion for summary judgment was complete). A court may also find bad faith when the moving party has a "history of dilatory tactics." *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 799 (9th Cir. 2001), *superseded by statute on other grounds as stated in Weaving v. City of Hillsboro,* 763 F.3d 1106, 1112 (9th Cir. 2014). To determine whether bad faith exists, the Court looks to the evidence in the record. *DCD Programs,* 833 F.2d at 187.

U.S. Security does not outright contend that Burrola acted in bad faith in submitting his Motion to Amend. U.S. Security does however allude that Burrola failed to provide the Court and opposing counsel with proper notice of his intention to seek addition of the claims or theories to his second cause of action; instead stating that the only substantive change is to drop the federal violation of U.S. Dept. of Labor Code 29 CFR 1910.141....". *Id.* Citing Federal Rule 7(b)(1) and *Calderon v. Kansas Dep't of Soc. & Rehabilitation Srvs.*, it argues the moving party must state with particularity the ground of the amendment and the relief requested. *Calderon v. Kansas Dep't of Soc. & Rehabilitation Srvs.*, 181 F.3d 1180, 1186-87 (10th Cir. 1999).

Burrola responds that the FAC is based upon the same factual allegations as in the original complaint, and thus only superficially adds the violation of California Labor Code sections 6300 et seq., to the Second Cause of Action and the related penalties. (Doc. No.

8

1  12 at 3.)  Moreover, California Labor Code section 98.6(a) is alleged in paragraph 24 of
2  the original complaint, as a part of the Second Cause of Action.  *Id.*

3          The Court finds that U.S. Security's argument for bad faith is lacking.  First,
4  California Labor Code section 98.6(a) was asserted by Burrola in the original Complaint.[4]
5  Thus, U.S. Security's argument on this point is moot.  Second, while California Labor Code
6  section 6300, *et seq.* missing from the notice and FAC caption, it is specifically alleged in
7  the Second Cause of Action's title and description.  Moreover, it was specifically alleged
8  in Burrola's Class and Representative Action Complaint[5] and PAGA Claim Notice and
9  Complaint submitted to Cal/OSHA.  (*See* Martorell Decl., Exhibit A, PAGA Claim Notice;
10 *See* Martorell Decl., Exhibit B, Division of Occupational Safety and Health's
11 acknowledgement of a complaint filed.)  Considering the aforementioned, it should not be
12 a stretch for diligent counsel to anticipate that counsel would seek leave to include section
13 6300, *et seq.* in this matter.

14         Burrola's decision to add a state law claim and dismiss his federal claim to
15 potentially challenge jurisdictional issues raised in U.S. Security's Motion to Compel
16 Arbitration is insufficient evidence of unfair tactical maneuvering to demonstrate the type
17 of bad faith that would justify denying leave.

18                                    **4. Conclusion**

19         Given Rule 15(a)'s liberal amendment standard, there is simply insufficient evidence
20 of undue delay, bad faith, and prejudice to U.S. Security, to deny Burrola's motion for
21 leave at this early stage of the litigation.  Therefore, Burrola's Motion for Leave is
22 **GRANTED**.  Burrola should file his proposed FAC, *see* Doc. No. 12-2, as an original
23 document within seven ("7") days of this Order.

24

25

26 [4]    In reply, Burrola argues that "California Labor Code section 98.6(a) is and always
   was conspicuously noted and cited on the original complaint.  There is no question that it
27 has always been a part of the original complaint."  (Doc. No. 12 at 3.)
28 [5]    Related case 3:18cv00595-BEN-JLB.

## B. U.S. Security's Motion to Compel Arbitration

Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When presented with a motion to compel arbitration, the Court is limited to determining (1) whether a valid arbitration agreement exists, and, if so (2) whether the arbitration agreement encompasses the dispute at issue. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). If these conditions are satisfied, the court must compel arbitration. 9 U.S.C. § 4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration.").

Here, U.S. Security contends that the Court should compel Burrola to honor his mutual agreement to arbitrate his claims and stay further judicial proceedings pending completion of arbitration. (Doc. No. 3 at 2.) Burrola argues the arbitration agreement is unenforceable under state and federal law, despite the strong public policy in favor of arbitration. (Doc. No. 6 at 10.) Moreover, the Agreement forced Burrola to forgo his right to join an already formed class and additionally forced him to waive suit of his Class Action claims. *Id.* Finally, the arbitration Agreement itself is procedurally and substantively unconscionable. *Id.*

### 1. The Arbitration Agreement is Valid

U.S. Security presents the Arbitration Agreement, bearing the signature of "Waldo Burrola" as evidence of the parties' agreement to arbitrate.[6] (*See* Doc. No. 3-2 at 10-12.)

---

[6] U.S. Security submitted a copy of a "Dispute Resolution Agreement," which it represents Burrola executed on November 21, 2016, that included an arbitration agreement. (*See* Doc. No. 3-2 at 10-12.) The third page of the "Dispute Resolution Agreement" includes the following provision [*see below*] followed by *completed* date and signature lines for both U.S. Security and Burrola:
"Entire Agreement

1  Burrola does not dispute that he signed the Arbitration Agreement; however, he argues the
2  arbitration agreement is unenforceable for lack of mutual assent. (*See* Doc. No. 6-1 ¶ 16.)

3  a.   *Mutual Manifestation of Assent*

4       Under California law, mutual assent is a required element of contract formation.
5  *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). It "may be manifested
6  by written or spoken words, or by conduct, and acceptance of contract terms may be
7  implied through action or inaction." *Id.* (internal citations omitted). "Thus, an offeree,
8  knowing that an offer has been made to him but not knowing all of its terms, may be held
9  to have accepted, by his conduct, whatever terms the offer contains." *Id.* (quoting *Windsor*
10 *Mills, Inc. v. Collins & Aikman Corp.*, Cal. App. 3d 987, 991 (1972)) (internal quotation
11 marks omitted). "Courts must determine whether the outward manifestations of consent
12 would lead a reasonable person to believe the offeree has assented to the agreement." *Id.*
13 (citing *Meyer v. Benko*, 55 Cal. App. 3d 937, 942-43 (1976)).

14      Here, Burrola argues there was no mutual assent to the arbitration provision
15 because it was buried in the Employment Packet and was not distinguished as a separate
16 contract that called attention to the arbitration provisions. (Doc. No. 6 at 4.) In support,
17 Burrola cites *Sparks v. Vista del Mar Child & Family Services* where the Court held there
18 was no mutual assent regarding the arbitration agreement because the agreement to
19 arbitrate was buried in the handbook and not distinguished from the other provisions."
20 *Sparks v. Vista del Mar Child & Family Services*, 207 Cal. App. 4th 1511, 1519 (2012).

21

22

23       ....
    **PLEASE READ THIS AGREEMENT CAREFULLY. BY SIGNING**
24  **IT, YOU ARE AGREEING TO FINAL AND BINDING**
    **ARBITRATION OF ANY AND ALL DISPUTES BETWEEN YOU**
25  **AND THE COMPANY INCLUDING WITHOUT LIMITATION,**
    **DISPUTES RELATED TO YOUR EMPLOYMENT WITH THE**
26  **COMPANY AND TERMINATION THEREOF, AND ANY CLAIMS**
    **OF DISCRIMINATION AND HARASSMENT."**
27

28 *Id.*
                                11

1  Moreover, he asserts that he was led to believe that the documents were merely "general

2  documents" and not something he should "concern" himself with.[7] (Doc. No. 6 at 11.)

3       U.S. Security responds that Burrola admittedly went through[8] and signed[9] the

4  Agreement during his hiring. (*See* Doc. No. 7.) Moreover, U.S. Security contends the

5  Agreement covers Burrola's claims, was properly formed, agreed to by both parties, and

6  cannot be held unconscionable as a matter of law under *Armendariz v. Found. Health*

7  *Psychcare Servs., Inc.*, 24 Cal. 4th 83, 99 (2000). *Id.*

8       The Court is unpersuaded by Burrola's argument. First, on November 21, 2016,

9  Burrola signed the Agreement which states: "…By accepting or continuing employment

10  with the Company, I understand that the Company and I mutually agree to resolve in

11  binding arbitration any claim that, in the absence of this Agreement, would be resolved in

12  a court under applicable state or federal law." (Doc. No. 3-2 at 9-11.) The Agreement

13  was clearly labeled "U.S. Security Associates Dispute Resolution Agreement" across the

14  top of the page, clearly and unambiguously identifies itself as a contract, and its terms

15  clearly state a mutual agreement for both Plaintiff and Defendant to arbitrate their

16  disputes. (Doc. No. 3-3, Ex. 1 to Lopez Decl.) Moreover, U.S. Security requires all new

17  employees to review and sign the Agreement during the hiring process. *Id.* ¶ 4. The

18  record reflects that Burrola conceded that at the time of his hiring, he understood one of

19  the documents he signed *in the packet* was a three-page standalone document titled

20  "Dispute Resolution Agreement." (Doc. No. 6-1, Burrola Decl., ¶¶ 8, 16.) The Court

21

22

23  [7]     "If a party wishes to bind in writing another to an agreement to arbitrate future

24  disputes, such purpose should be accomplished in a way that each party to the agreement
   will fully and clearly comprehend that the agreement to arbitrate exists and binds the

25  parties thereto." *Knutson*, 771 F.3d 559 at 566.

26  [8]     "…as I began to go through the packet I realized there were places within the
   packet left blank for my signature." (*See* Doc. No. 6-1 [Burrola Decl., ¶ 9] at 1.)

27  [9]     "I signed all documents within the packet on November 21, 2016." (*See Id.*

28  [Burrola Decl., ¶ 16] at 2.)

12

1  notes that Christine Badua, H.R. Administrator of U.S. Security, also signed the

2  Agreement on behalf of U.S. Security. *Id.* at 11.

3      The Court further finds *Sparks* distinguishable, rather than comparable to this case.

4  As stated *supra*, Burrola conceded that he was aware one of the documents he *signed* was

5  the Agreement.[10] *Id.* Moreover, as far as the Agreement being "buried," it was one

6  standalone (3-page document) of *only* 12 total documents in the packet, which itself

7  totaled *only* 22 pages. (Doc. No. 3-3, Supp. Lopez Decl., ¶ 4, attached as Ex. 1 to Supp.

8  Boughton Decl.) And again, the Agreement also clearly covers the claims that make up

9  this dispute. (*See* Doc. No. 7-1.) Furthermore, it plainly states that it applies to

10  "…all…employment-related disputes." *Id.*

11      Accordingly, as both of these threshold questions have been answered in the

12  affirmative, the Court must compel enforcement of the arbitration agreement according to

13  its terms, unless the Agreement may be invalidated according to a traditional contract

14  defense.[11]

15  ## 2. The Arbitration Agreement Is Not Unconscionable.

16      Burrola argues that even if an arbitration agreement exists, it is unenforceable

17  because it is both procedurally and substantively unconscionable. (Doc. No. 6 at 7-10.)

18      Under California law, a court may find a contract unenforceable or limit a clause of

19  the contract if it is found to be unconscionable at the time it was made. Cal. Civ. Code §

20  1670.5(a). "A contract or provision, even if consistent with the reasonable expectations of

21  the parties will be denied enforcement if, considered in its context, it is unduly oppressive

22  or unconscionable." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83,

---

[10]    "…, the Agreement is merely one of only 12 documents in the new hire packet, which itself totals only 22 pages." (Doc. No. 7-3, Supp. Lopez Decl., ¶ 4, attached as Ex. 1 to Supp. Boughton Decl.)

[11]    The Court finds the "reasonable meaning" of Burrola's signature on the Agreement together with the event's leading to it are manifestations of assent to the terms of the arbitration agreement.

13

113 (2000). A finding of unconscionability requires both a procedural and substantive component, though they "need not be in the same degree." *Id.* at 114.

a. *Procedural Unconscionability*

Procedural unconscionability concerns the level of oppression and surprise involved in the negotation of the agreement. *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013). Oppression addresses the relative bargaining power of the parties, while surprise addresses the degree of clarity of the agreement and the expectations of the weaker party. *Id.*

Burrola argues that the agreement is procedurally unconscionable because: (*i*) *Unequal Bargaining Power*, and (*ii*) *Unfair Surprise*. (Doc. No. 6 at 15.) The Court evaluates each argument in turn.

*i. Unequal Bargaining Power.*

Burrola argues that because he was provided with the arbitration agreement on a take-it-or-leave-it basis, he was not afforded the opportunity to negotiate, and that establishes procedural unconscionability. He cites California precedent for the proposition that "oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 480 (2006). The Court also notes other cases where the Ninth Circuit has found take-it-or-leave-it contracts to be procedurally unconscionable. *See Chavarria*, 733 F.3d at 923 (finding procedural unconscionability where an employee is presented with a contract drafted by an employer as a condition of employment and on a take-it-or-leave-it basis); *see also Tagliabue*, 2015 WL 8780577, at *5 (same).

Here, Burrola was not in a position to change the terms of the arbitration agreement and it is clear that had he not signed the arbitration agreement, then his offer would likely have been rescinded. (*See* Doc. No. 6-1 [Burrola Decl. ¶¶ 6, 12, 15].) The Court finds that this fact indicates some "oppression" was involved in the agreement because Burrola was not in a position to negotiate. Thus, the Court considers the fact Burrola wasn't provided

14

with an opportunity to negotiate the terms of the agreement as an indication of some procedural unconscionability.

### *ii. Unfair Surprise.*

Burrola contends that the Agreement was "buried" within the fifteen to twenty-page employment packet of documents covering various provision for work, benefit information, and other items. (Doc. No. 6 at 10-11.) By U.S. Security "burying" the Agreement, Burrola contends he was unfairly surprised upon learning he was precluded from bringing suit in this matter. *Id.* at 11.

The Court will briefly examine this issue as it was already addressed *supra.* Here, Burrola was advised of the arbitration clause during his onboarding. Unfair surprise relates to "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Armendariz*, 24 Cal. 4th at 114. The Arbitration Agreement, a three-page document (*see* Doc. No. 3-2 [Exhibit A] at 10-12), provides in pertinent part:

> ....
> By accepting or continuing employment with the Company, I understand that the Company and I mutually agree to resolve in binding arbitration any claim that, in the absence of this Agreement, would be resolved in a court under applicable state of federal law.
> ....
> I entered into this Agreement as a condition of accepting or continuing my employment with the Company.
> ....
> The Company and I agree that this Agreement is governed by the FAA and any arbitration will be administered by JAMS under the rules of JAMS.

(Doc. No. 3-1 at 5-6.) Moreover, per Rosa Lopez, Human Resources Specialist for U.S. Security, U.S. Security's new hire policies and procedures requires:

> "...that no other person, including any employee, may fill out or sign a newly hired employee's documents or on their behalf. To be sure new employees go over each document, U.S. Security's policy and procedure is to assist any new employee by explaining and translating any documents within the new hire packet as necessary so that he or she fully understands what he or she is receiving, what's in each document, and the impact of signing each document.

15

Employees have the entire orientation to fill out and submit the new hire paperwork. The whole orientation is about one hour to one and a half hours. On the occasions when someone hasn't completed and submitted their new hire paperwork, or had questions, we allowed the newly hired employee to stay over the orientation to have their questions answered and complete the paperwork."

(*See* Doc. No. 7-1 [Ex. 1, Lopez Decl. ¶¶ 1, 5] at 1-2.)

While Burrola was prohibited from taking U.S. Security's new hire documents home to review, he could have requested more time to review them after the orientation had concluded. [12] On November 21, 2016, Burrola did not request more time to review and understand the documents because he wanted to start working without any delay. (*See* Burrola Decl.) Thus, the Burrola was aware the Agreement and signed it absent any unfair surprise.

Accordingly, the Court finds that Burrola was not subjected to any unfair surprise; but the take-it-or-leave-it nature of the agreement establishes some degree of procedural unconscionability. *Nguyen v. Applied Med. Res. Corp.*, 4 Cal. App. 5th 232, 248 (Ct. App. 2016) (finding "some degree" of procedural unconscionability because arbitration agreement was presented as an adhension contract). With that in mind, the Court proceeds to consider if the agreement was substantively unconscionable.

b.   *Substantive Unconscionability*

"A contract is substantively unconscionable when it is unjustifiably one-sided to such an extent that it shocks the conscience." *Chavarria*, 733 F.3d 916 , 922 (9th Cir. 2013). Burrola argues that the arbitration agreement is substantively unconscionable because it: (*i*) *Prevents an Employees from Recovering Attorneys' Fees*, and (*ii*) *it lacks Modicum of Bilaterality*. (Doc. No. 6 at 11.)

///

---

[12]    Burrola contends that he did not understand all the forms he signed during his onboarding. When Burrola asked if he could take the documents home to review, "he was emphatically told 'No!'" (Doc. No. 6 at 2.) .

16

### i. Right to Attorneys' Fees.

Burrola argues the Agreement prevents the recovery of attorneys' fees for PAGA representative claims because the Agreement "does not explicitly provide for attorneys' fees, stating that 'the parties shall be responsible for their own attorneys' fees and costs'." (Doc. No. 6 at 12.) U.S. Security disputes this arguing the "Agreement makes explicitly clear that all remedies available in court are also available in arbitration." (*See* Doc. No. 3-3 [Ex. 1 to Lopez Decl.] at 9.)

The Court finds Burrola's argument unavailing. While he correctly states the Agreement, *as written*, does not specifically provide for attorneys' fees in arbitration, the law is well settled that "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Cal. Labor Code § 2699(g)(1). Thus, to the extent the prevailing party can recover attorneys in court, they can do so in arbitration. As such, the fact that it is not be explicitly described in the terms of the agreement does not invalidate the Agreement. Furthermore, the Court notes that the Agreement also provides that U.S. Security will pay "the arbitrator's fees and expenses, any costs of the hearing facility, and any costs of the arbitration service." (Doc. No. 3-1 at 10.)

In sum, Burrola's claim is unpersuasive because the law provides the prevailing party the right to recovery of attorneys' fees.

### ii. Modicum of Bilaterality.

Burrola next argues the Agreement is not bilateral because there was no opportunity for him to negotiate the terms of employment under the Agreement. (Doc. No. 6 at 11.) The Court disagrees. In *Armendariz*, the California Supreme Court held that an arbitration agreement was unconscionable if it required the employee to arbitrate his claims but exempted the employer from arbitrating his claims-thus lacking a "modicum of bilaterality." *Armendariz*, 24 Cal. 4th at 120. The agreement in this case is distinguishable from *Armendariz* because it requires both parties to arbitrate employment disputes and is thus sufficiently bilateral.

Specifically, the Agreement explicitly states: "This Agreement is supported by the parties' mutual promises to submit any claims they may have against the other to final and binding arbitration, rather than to have them decided in court before a judge or jury." (Doc. No. 3-1 at 8.) Moreover, the agreement goes on to define what types of claims would not mutually require arbitration.[13] *See Id.* at 9-10. Thus, the Court finds that the agreement is sufficiently bilateral.

As unconscionability is determined on a sliding scale between procedural and substantive unconscionability, even a strong showing of procedural unconscionability requires at least some substantive unconscionability for the contract term to be invalid. In this case, Burrola is unable to prove the existence of substantive unconscionability and only barely establishes the existence of procedural unconscionability. Therefore he fails to meet his burden of proving the arbitration provision is unconscionable under California law. Because Burrola also falls short of demonstrating the arbitration provision is invalid for lack of mutual assent, the Court finds the Agreement valid and enforceable.

### 3. **Arbitrating PAGA Claims.**

*i. Arbitrating PAGA Claims.*

Burrola contends that the demand to arbitrate his PAGA cause of action is "unenforeable." (*See* Doc. No. 6.) U.S. Security concedes that if a PAGA claim is plead here, it cannot be subject to arbitration, but that does not prevent the arbitrability of

---

[13]    Claims Not Subject to Arbitration
"This Agreement does not apply to any claims by me for workers' compensation benefits, unemployment insurance benefits or under a benefit plan where the plan specifies a separate arbitration procedure. The Agreement also does not apply to any claims filed with an administrative agency which are not legally subject to arbitration under this policy, or which are otherwise expressly prohibited by law from being subject to arbitration under this policy. This Agreement also does not preclude either party from applying to a court for a temporary restraining order or preliminary injunction to the extent provided by California Code of Civil Procedure section 1281.8." *The Court notes that none of these exceptions apply to the case at hand.* (Doc. No. 3-1 at 8-11.)

1   Burrola's remaining claims. (Doc. No. 7 at 2.)  The Court agrees.  *See Jacobson v. Snap-*
2   *on Tools Co.*, 2015 WL 8293164, at *5 (N.D. Cal. Dec. 9, 2015) (noting that the plaintiff's
3   "non-class, representative claim for civil penalties under PAGA is not subject to
4   arbitration.  [The plaintiff's] right to bring representative PAGA claims is not waived by
5   the Agreement or preempted by the FAA.");  *see also Sakkab v. Luxottica Retail N. Am.,*
6   *Inc.*, 803 F.3 d 425 (9th Cir. 2015); *Iskanian v. CLS Transp., L.A., LLC*, 327 P.3d 129 (Cal.
7   2014).  As such, Burrola's PAGA claim is not subject to arbitration.

## 4. Recovery of Remedies or Other Forms of Relief.

9       Burrola argues that the agreement prevents the pursuit of employee's statutory rights
10  thus preventing all of the types of relief that would be otherwise available in court.  (Doc.
11  No. 6 at 16-17.)

12      U.S. Security contends the argument lacks merit, arguing the Burrola does not
13  actually assert or argue that the Agreement has any improper limitation on remedies, but
14  rather opines that if the agreement prohibited the recovery of fees for a PAGA claim, it
15  would be unconscionable.  (*See* Doc. No. 7 at 6.)

16      "[A] PAGA action is a statutory action in which the penalties available are measured
17  by the number of Labor Code violations committed by the employer." *Sakkab v. Luxottica*
18  *Retail N. Am., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015).  The employees bringing the action
19  do so as agents or proxies of the state's labor law enforcement agencies.  *Id.*  PAGA's civil
20  penalties are $100 for each aggrieved employee per pay period for the initial violation and
21  $200 per employee for each subsequent pay period. Cal. Lab. Code § 2699(f)(2).  "[C]ivil
22  penalties recovered by aggrieved employees shall be distributed as follows: 75% to the
23  Labor and Workforce Development Agency ... and 25% to the aggrieved employees." *Id.*
24  § 2699(i); *see Urbino*, 726 F.3d at 1121.  "Any employee who prevails in any action shall
25  be entitled to an award of reasonable attorney's fees and costs."  Cal. Lab. Code §
26  2699(g)(1).  Any agreement to waive PAGA claims is an agreement to limit the penalties
27  plaintiff-employees may recover on behalf of the state.  *Id.* at 436.  Because a settlement

28

of PAGA claims settles claims that could otherwise be brought by the state, the trial court must "review and approve" any settlement of PAGA claims. Cal. Lab. Code § 2699(l)(2).

Having determined the arbitration of the individual claims is appropriate, the Court likewise stays Burrola's claim for civil penalties under PAGA.

### 5. Class Action Waiver

Burrola argues that the Agreement is unenforceable, and therefore invalid because the Class Action Waiver violates the NLRA. Section 7 of the NLRA provides that:

> [e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. . ."

29 U.S.C. § 157.

Burrola argues this language creates a federal substantive right on behalf of employees to join together in class action litigation to prosecute employment disputes. In support, Burrola cites *Morris v. Ersnt & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted*, 85 U.S.L.W. 3341 (U.S. Jan. 13, 2017) (No. 16-300).

In *Morris*, Plaintiff Morris filed class and collective action claims against his employer Ernst & Young alleging that it violated the Fair Labor Standards Act and California labor laws by misclassifying him and others similarly situated as exempt employees to avoid paying overtime wages. *Morris*, 834 F.3d at 979. Because Morris had signed an arbitration agreement purporting to require him to bring all legal claims against Ernst & Young via arbitration as an individual and in separate proceedings, Ernst & Young moved to compel arbitration. (*Id.*) Morris opposed by arguing that the arbitration agreement, by requiring only individual prosecution of employment claims, violated his federal substantive rights under the NLRA to engage in "concerted action" against his employer. (*Id.* at 979-80.) The Ninth Circuit agreed. (*Id.* at 990.)

The Ninth Circuit determined that the National Labor Relations Act "("NLRA")" establishes a core right to concerted activity,[14] which "precludes contracts that foreclose the possibility of concerted work-related legal claims." (*Id.*, 834 F.3d at 989-90.) Thus, the provision in the arbitration agreement at issue in *Morris* that required employees to resolve all of their legal claims in "separate proceedings" (*i.e.*, a concerted action waiver) was unenforceable because it both "prevents concerted activity by employees in arbitration proceedings" and requires employees to only use arbitration, which effectively prevents the employees from initiating concerted legal action anywhere else. (*Id.* at 983-84.)

After the parties filed their briefs in this case, the Supreme Court granted *certiorari* in *Morris v. Epic Sys. Corp.*, 138 S. Ct. at 1612. The Court considered *Morris* along with Seventh Circuit and Fifth Circuit cases that addressed whether employees should be allowed to bring class or collective actions where they agreed to one-on-one arbitration and reversed *Morris*.[15] (*Id. at 1632.*)

On May 21, 2018, the Supreme Court reversed the Ninth Circuit's decision in *Morris* in *Epic*, 138 S. Ct. 1612 (2018)[16], which held that an arbitration agreement in which an employee agrees to arbitrate claims against an employer on an individual – rather than on a class or collective – basis, is enforceable and does not violate the NLRA. In light of the recent decision in *Epic*, Burrola's argument that the class action waiver violates the NLRA in this matter is without merit.

---

[14] The right to concerted activity is "the right of employees to act together." *Morris*, 834 F.3d at 980.

[15] In *Morris*, the Ninth Circuit reversed a district court's grant of a motion to compel arbitration. *Epic Sys. Corp.* 138 S. Ct. at 1620. The Ninth Circuit reasoned the FAA's "savings clause" does not require a court to compel arbitration if the arbitration agreement violates another federal law, such as violating sections of the National Labor Relations Act ("NLRB") by barring employees from pursuing collective action. (*Id.*)

[16] *Epic* was consolidated with *Morris* (No. 16-300) and a Fifth Circuit Court decision, *NLRB v. Murphy Oil USA, Inc.*, No. 16-307.

21

### 6. **A Stay of Proceedings Pending Completion of Arbitration is Warranted**

U.S. Security requests that the Court stay the proceedings pending arbitration, arguing that a stay is mandatory pursuant to sections 3 and of the FAA. (Doc. No. 3-1 at 22.)

"A party is only entitled to a stay pursuant to section 3 as to arbitrable claims or issues." *Winfrey v. Kmart Corp.*, 692 F. App'x 356, 357 (9th Cir. 2017) (*citing Leyva v. Cert. Grocers of Cal., Ltd.* 593 F.2d 857, 863 (9th Cir. 1979). "As to non-arbitrable claims and issues, however, the district court has discretion whether to stay the litigation pending arbitration." (*Id.*) A trial court may grant a stay "pending resolution of independent proceedings which bear upon the case" where "it is efficient for [the court's] own docket and the fairest course for the parties." *Leyva*, 593 F. 2d at 863.

Although a stay is mandatory as to Burrola's arbitrable claims, the Court has the discretion to decide whether to stay the proceedings as to his non-arbitrable PAGA or class claims. The Court finds that a stay is proper in these circumstances. First, the factual issues that will be resolved in arbitration clearly "bear upon [the instant] case" because these facts will determine U.S. Security's liability for Burrola's PAGA claim. (*See Id.*) Thus, it is in the interest of efficiency to grant a stay in order to avoid duplicative proceedings as to the same issues. Second, the Court is not convinced that there are any potential plaintiffs who will be prejudiced by the stay. Although PAGA claims are necessarily representative actions, they are not necessarily class actions. *Arias v. Super. Ct.,* 209 P.3d 923, 930 n.5 (2009). And while Burrola seeks to represent a class of employees who were harmed by U.S. Security's conduct, (*see* FAC ¶ 7) he has not alleged sufficient facts to support his contention that this is a class claim. Rather, the alleged facts and the nature of the claims appear highly individualized. Thus, no unfair prejudice will result from granting the stay.

In light of the foregoing analysis granting U.S. Security's Motion to Compel Arbitration of Burrola's individual claims, the Court **STAYS** this action pursuant to the FAA, 9 U.S.C. § 3, pending completion of the arbitration proceedings.

### 7. Conclusion

The Court finds that because Burrola agreed to arbitrate his individual claims under the terms of the Agreement, he is required to do so in this matter. Therefore, the Court **GRANTS** U.S. Security's Motion to Compel Arbitration as to Burrola's individual, non-PAGA or Class Claims.

## IV. CONCLUSION

In accordance with the conclusions set forth above, the Court **GRANTS** Burrola's Motion for Leave to File a First Amended Complaint. The Court further **GRANTS** U.S. Security's Motion to Compel Arbitration and stays the case. U.S. Security's request to dismiss the class claims is **DENIED**. The proceedings are **STAYED** pending arbitration, including as to Burrola's non-arbitrable representative PAGA and Class Claims.

**IT IS SO ORDERED.**

Dated: February 7, 2019

**HON. ROGER T. BENITEZ**
United States District Judge